UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GANSHYAMKUMAR SHAMBHUBHAI
PATEL,

        Petitioner,

    v.                       Case No.  2:25-cv-870-JES-NPM

DAVID HARDIN, et al.,

        Respondents,

_____/

**OPINION AND ORDER**

      Before the Court is Ganshyamkumar Shambhubhai Patel's Amended Petition for Writ of Habeas Corpus. (Doc. 9). Patel claims that the Attorney General is holding him without a valid bond hearing in violation of the Immigration and Nationality Act (INA) and that his continued detention without a hearing contravenes due process and the Administrative Procedures Act. (Id.) The issues have been fully briefed. (Doc. 15; Doc. 15-1; Doc. 19). For the below reasons, the Court grants the petition in part.

**I.  Background**

      Patel is a native and citizen of India who entered the United States on July 20, 2011, without inspection. (Doc. 9 at 3). Patel was apprehended and detained under INA § 236(a). (Doc. 9 at 3; Doc. 9-1). During those proceedings, Patel was issued a Notice to Appear (NTA) that did not include the date and time for hearing. (Doc. 9 at 3; Doc. 9-2). Patel was released from government

custody, and the NTA was returned as undeliverable. (Doc. 9 at 3).[1]  Patel did not appear at his § 236(a) hearing, and in October of 2012, the Immigration Court in Houston, Texas issued an order removing him in absentia.  (Id.).  Patel remained in the United States.  (Id.)

In July of 2019, Patel filed a petition for a U-Visa,[2] which is pending with U.S. Citizenship and Immigration Services (USCIS). (Doc. 9 at 3).  In November of 2023, USCIS informed Patel that it could not grant him U-1 nonimmigrant status because the statutory cap had been met for the year.  (Id. at 3-4).  However, USCIS informed Patel that his petition was "bona fide" and that he was warranted "a favorable exercise of discretion to receive employment authorization and deferred action."  (Doc. 9 at 4; Doc. 9-3).  After receiving employment authorization, Patel began

---

[1] Patel asserts that he provided the Immigration Court and his former immigration attorney with the correct address.  (Doc. 9 at 3).

[2] The U-visa program grants lawful temporary resident status and work authorization to an individual who (1) "has suffered substantial physical or mental abuse as a result of having been a victim of qualifying criminal activity" in the United States; (2) "possesses credible and reliable information ... concerning the qualifying criminal activity"; and (3) "has been helpful, is being helpful, or is likely to be helpful to a certifying agency in the investigation or prosecution of the qualifying criminal activity[.]"  8 C.F.R. § 214.14(b); see also 8 U.S.C. §§ 1101(a)(15)(U), 1184(p)(3).  The USCIS is permitted to issue only 10,000 U-visas per year.  8 U.S.C. § 1184(p)(2).

operating a retail business in Florida.  (Doc. 9 at 4.)  He has no criminal history.  (Id.)

Immigration and Customs Enforcement (ICE) arrested Patel at his retail business on July 31, 2025 and detained him at the Krome Processing Center in Miami-Dade County.  (Doc. 9 at 4.)  He was later relocated to the Glades County Detention Center.  (Id.) Following his immigration arrest, Patel moved to reopen the proceedings at the Houston Immigration Court.  (Id.)  The proceedings were reopened, and the Immigration Court vacated his order of removal in absentia.  (Id.)  ICE is holding Patel under 8 U.S.C. § 1225.  (Doc. 19-2 at 2.)

Despite his designated status under § 1225, Patel sought a bond hearing under 8 U.S.C. § 1226(a), which is a companion statute that applies to aliens who are "arrested and detained" on "a warrant issued by the Attorney General for removal."  Id.  Unlike its counterpart, a noncitizen held under § 1226(a) can seek release in a bond hearing.  8 C.F.R. § 1236.1(d)(1).  The Immigration Court denied Patel's bond request with a citation to Matter of Yajure Hurtado,[3] because Patel entered the United States without inspection in 2011.  (Doc. 9 at 5; Doc. 9-4).  The Immigration

---

[3] In Yajure Hurtado, the BIA held that immigration judges lack jurisdiction to hear bond requests of noncitizens who are present in the United States without inspection and admission because those individuals are properly classified under 8 U.S.C. § 1225(b)(2), subject to mandatory detention, and ineligible for a bond hearing. 29 I&N Dec. 225 (BIA 2025).

Court also noted that Patel had not appeared at the 2012 hearing, has been living in the United States for thirteen years under a final order of removal, and has not provided an original identification document. (Id.)

## II.  Discussion

The core of the dispute before this Court is whether 8 U.S.C. § 1225(b)(2) or § 1226(a) of the INA applies to Patel.  The distinction matters because § 1225(b)(2) mandates detention, whereas aliens detained under § 1226(a) are entitled to a bond hearing before an immigration judge.

### A. Subject-Matter Jurisdiction

Respondents argue that the INA divests the Court of jurisdiction over Patel's petition. (Doc. 15 at 4.)  They first point to a provision of the INA that bars courts from hearing certain claims.  It states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  But this jurisdictional bar is narrow.  "The provision applies only to three discrete actions that the Attorney

4

General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders." Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999) (emphasis in original); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." Canal A Media Holding, LLC v. United States Citizenship and Immigr. Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents cite two Eleventh Circuit cases to support their argument that § 1252(g) strips the Court of jurisdiction to consider Patel's claims: Gupta v. McGahey, 709 F.3d 1062 (11th Cir. 2013) and Alvarez v. ICE, 818 F.3d 1194, 1203 (11th Cir. 2016). In both cases, the plaintiffs filed Bivens[4] actions against ICE officials after their release from detention. The Eleventh Circuit found that § 1252(g) barred both actions because they challenged the methods the defendants used to commence removal proceedings.

---

[4] Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

The factual and legal scenario presented in this case differs from Gupta and Alverez. Patel does not challenge the respondents' decision to commence removal proceedings against him, the decision to arrest and detain him, or the methods by which he is detained. Rather, Patel challenges the Attorney General's treatment of him as an "alien seeking admission," whose detention is governed by § 1225(a)(2) rather than § 1226(a). Cf. Madu v. U.S. Atty. Gen., 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [§ 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

In short, Patel asks the Court to answer a legal question—whether he is subject to mandatory detention under § 1225(b)(2) or discretionary detention under § 1226(a). He does not ask the Court to second-guess the respondents' discretionary decision to commence removal proceedings against him. Thus, § 1252(g) does not bar this action. See Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *3-4 (S.D. Fla. Sept. 9, 2025) (finding Section 1252(g) inapplicable to an alien's challenge of immigration detention based on ICE's noncompliance with statutory requirements when revoking an order of supervised release).

The respondents also raise the INA's "zipper clause," which states:

6

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). Specifically, they argue that because Patel challenges ICE's detention determination, which they characterize as "an action arising from ICE's choice to carry out proceedings to remove him from the United States," the zipper clause applies. (Doc. 15 at 8).

This argument does not carry the day. Supreme Court and Eleventh Circuit precedent is clear. The zipper clause only applies to claims requesting review of a removal order. See Madu, 470 F.3d at 1365 (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation). Patel is not asking for review of an order of removal; he is not challenging the decision to detain him or to seek removal; and he is not challenging any part of the process by which his removability will be determined. Jennings, 583 U.S. at 294. The zipper clause does not apply.

7

**B. Exhaustion of Administrative Remedies**

Respondents next argue that the Court should dismiss this action as unexhausted since Patel is actively pursuing his administrative remedies before the Board of Immigration Appeals (BIA).  (Doc. 15 at 8).  Patel asks the Court to excuse administrative exhaustion because it would be futile.  (Doc. 9 at 11).  In Yajure Hurtado, the BIA held that immigration judges never have authority to consider bond requests from noncitizens who entered the United States without inspection because those aliens are always held under § 1225 and must be detained for the duration of their removal proceedings.  29 I&N Dec. 216, 220 (BIA. 2025).

Petitioners need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it."  McCarthy v. Madigan, 503 U.S. 140, 148 (1992); see also Shalala v. Ill. Counsel on Long Term Care, Inc., 529 U.S. 1, 13 (2000).  The Immigration Court concluded that Patel was not entitled to relief because he was being held under 1225(b)(2).  (Doc. 9-4).  Thus, requiring Patel to make an administrative request for a bond hearing would be futile because the result is predetermined.  District courts around the country have reached the same conclusion.[5]  Under these circumstances, the Court finds good cause to excuse exhaustion.

---

[5] See, e.g., Hernandez Capote v. Sec'y of U.S. Dep't of Homeland Sec., No. 25-13128, 2025 WL 3089756, at *3 (E.D. Mich.

**C. Legal Basis for Detention**

Patel asserts that Respondents are detaining him in violation of the Fifth Amendment's Due Process Clause and the Administrative Procedures Act (APA). (Doc. 9 at 12, 14). The key question is whether Patel's detention is governed by § 1225(b)(2), which mandates detention, or § 1226(a), which allows for release on bond. The respondents argue that Patel is an "alien seeking admission" under § 1225(b)(2) because he entered the United States illegally. They contend it does not matter how long he has been in the country. (Doc. 15 at 11.) Patel argues he is not an "alien seeking admission" because he was arrested years after his unlawful entry, so § 1226(a) applies. (Doc. 9 at 8.)

The Supreme Court recently analyzed the interplay between § 1225 and § 1226 in <u>Jennings v. Rodriguez</u>. There, the Court

---

Nov. 5, 2025); <u>Corona Diaz v. Olson</u>, No. 25-CV-12141, 2025 WL 3022170, at *3 (N.D. Ill. Oct. 29, 2025); <u>Tomas Elias v. Hyde</u>, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *3 (D.R.I. Oct. 27, 2025) <u>Contreras-Lomeli v. Raycraft</u>, No. 2:25-cv-12826, 2025 WL 2976739, at *3 (E.D. Mich. Oct. 21, 2025); <u>H.G.V.U. v. Smith</u>, No. 25-cv-10931, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025); <u>Sanchez Alvarez v. Noem</u>, No. 1:25-cv-1090, 2025 WL 2942648, at *2-3 (W.D. Mich. Oct. 17, 2025); <u>Puga v. Assistant Field Office Director, Krome North Service Processing Center</u>, No. 25-24535-CIV-ALTONAGA, 2025 WL 2938369, at *2 (S.D. Fla. Oct. 15, 2025); <u>Ballestros v. Noem</u>, No. 3:25-cv-594-RGJ, 2025 WL 2880831, at *3 (W.D. Ky. Oct. 9, 2025); <u>Artiga v. Genalo</u>, No. 25-CV-5208-OEM, 2025 WL 2829434, at *3-4 (E.D.N.Y. Oct. 5, 2025); <u>Inlago Tocagon v. Moniz</u>, No. 25-cv-12453, 2025 WL 2778023, at *2 (D. Mass. Sept. 29, 2025); <u>Chavez v. Noem</u>, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3-4 (S.D. Cal. Sept. 24, 2025); <u>Vasquez v. Feeley</u>, No. 25-cv-01542, 2025 WL 2676082, at *9-10 (D. Nev. Sept. 17, 2025).

observed that the decision of who may enter this country and who may remain "generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." Jennings, 583 U.S. at 287. As relevant here, the Court explained that § 1225 "applies primarily to aliens seeking entry into the United States." Id. at 297. By contrast, § 1226 "applies to aliens already present in the United States." Id. at 303. "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." Id. "Section 1226(a) also permits the Attorney General to release those aliens on bond[.]" Id.

The government followed this dichotomy "for the past three decades." Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025). That is, until July 8, 2025, when the Department of Homeland Security (DHS) announced a change:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated

10

in the same manner that "arriving aliens" have
historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for

Applicants for Admission, AILA Doc. No. 25071607 (July 8, 2025);

see also Merino v. Ripa, No. 25-23845-CIV-MARTINEZ, 2025 WL

2941609, at *3 (S.D. Fla. Oct. 15, 2025) (discussing the memo).

The BIA adopted and applied this new policy in Yajure Hurtado,

supra.

Since DHS's change in policy, courts in this District and
around the country have rejected its new interpretation of the
INA.[6]  This Court now joins the consensus, concluding that the
interpretation is flawed for several reasons.

---

[6] See, e.g., Vincens-Marquez v. Soto, No. 25-16906 (KSH), 2025 WL
3097496 (D. N.J. Nov. 6, 2025); Beltran, et. al v. Noem, No. 25-
cv-2650-LL-DEB, 2025 WL 3078837 (S.D. Cal. Nov. 4, 2025); Aguirre
Villa v. Normand, No. 5:25-cv-89, 2025 WL 3095969 (S.D. Ga. Nov.
4, 2025); Flores v. Olson, 25 C 12916, 2025 WL 3063540 (N.D. Ill.
Nov. 3, 2025); J.A.M. v. Streeval, No. 4:25-cv-342 (CDL), 2025 WL
3050094 (M.D. Ga. Nov. 1, 2025); Ramirez Valverde v. Olson, No.
25-CV-1502, 2025 WL 3022700 (E.D. Wis. Oct. 29, 2025); Hernandez
Lopez v. Hardin, No. 2:25-cv-830-KCD-NPM, 2025 WL 3022245 (M.D.
Fla. Oct. 29, 2025); Orellana v. Noem, No. 4:25-CV-112-RGJ, 2025
WL 3006763 (W.D. Ky. Oct. 27, 2025); Tomas Elias v. Hyde, No. 25-
cv-540-JJM-AEM, 2025 WL 3004437 (D. R.I. Oct. 27, 2025); Aguilar
Guerra v. Joyce, 2:25-cv-534-SDN, 2025 WL 2986316 (D. Maine Oct.
23, 2025); Contreras Maldonado v. Cabezas, No. 25-cv-13004, 2025
WL 2985256 (D. N.J. Oct. 23, 2025); Gomez Garcia v. Noem, No. 5:25-
cv-02771-ODW (PDx), 2025 WL 2986672 (C.D. Cal. Oct. 22, 2025);
Caballero v. Baltazar, No. 25-cv-03120-NYW, 2025 WL 2977650
(D.Colo. Oct. 22, 2025); Ochoa Ochoa v. Noem, No. 25-CV-10865,
2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); N.A. v. Larose, No. 25-
cv-2384-RSH-BLM, 2025 WL 2841989 (S.D. Cal. Oct. 7, 2025); Lopez-
Arevelo v. Ripa, No. EP-25-CV-337-KC, 2025 WL 2691828 (W.D. Tex.
Sept. 22, 2025);  Sampiao v. Hyde, No. 1:25-CV-11981-JEK, 2025 WL
2607924 (D. Mass. Sept. 9, 2025); Pizarro Reyes v. Raycraft, No.

First, the text of the statutes suggests that § 1225 does not apply to aliens who have been in the United States for long periods. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Id. The use of "arriving" indicates that the statute governs incoming noncitizens, not those present already. This is supported by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2). These limited and more specific methods of entry suggest that § 1225 applies to noncitizens arriving at a border or port and are presently "seeking admission" into the United States.

---

25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); Mosqueda v. Noem, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); Garcia v. Noem, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); Lopez-Campos v. Raycraft, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); Kostak v. Trump, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); Leal-Hernandez v. Noem, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); Ramirez Clavijo v. Kaiser, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); Samb v. Joyce, No. 25 Civ. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); Romero v. Hyde, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); Arrazola-Gonzalez v. Noem, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); Maldonado v. Olson, No. 25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); Lopez Benitez v. Francis, No. 25 Civ. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); Rosado v. Figueroa, No. 25-CV-02157-PHX-DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, No. 25-CV-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); Diaz Martinez v. Hyde, No. 25-CV-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); Gomes v. Hyde, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025).

Next, context and the Supreme Court's interpretation of these statutes point in the same direction. Courts are meant to "construe statutes, not isolated provisions." King v. Burwell, 576 U.S. 473, 486 (2015). As mentioned, the Supreme Court has identified § 1226 as the "default rule" applicable "to aliens already present in the United States." Jennings, 583 U.S. at 281, 288. "That Congress separated removal of arriving aliens from its more general section for 'Apprehension and detention of aliens,' § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." Pizarro Reyes, 2025 WL 2609425, at *5. The Supreme Court has also observed that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953)); see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Third, when considering amendment of the INA in 1996, Congress again acknowledged that noncitizens present in the United States have more substantial due process rights than new arrivals. See H.R. Rep. 104-469, p.1, at 163-66 (recognizing "that an alien present in the U.S. has a constitutional liberty interest to remain in the U.S., and that this liberty interest is most significant in the case of a lawful permanent resident alien"). Following the amendment, federal regulations explained, "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

Finally, accepting Respondents' argument would leave § 1226 superfluous. Interpreting § 1225 to govern all noncitizens present in the country who had not been admitted leaves § 1226 with no apparent application. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

It is undisputed that Patel has been in this country since 2011. His detention is thus governed by § 1226(a). As a noncitizen detained under § 1226(a), Patel has a right to a bond hearing.

14

See Jennings, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). And while the Court recognizes that the Immigration Court listed other matters in its bond order, when it drafted the order denying a bond hearing, the court believed it was bound by Yajure Hurtado and lacked jurisdiction to consider Patel's entitlement to bond. Patel is entitled to a bond hearing under § 1226(a) without the Immigration Court's predetermination that it lacked jurisdiction to consider bond.

Patel also challenges his detention under the Fifth Amendment and the Administrative Procedure Act (APA). These claims are not addressed "given that the Court [is granting] the relief [Patel] seeks based on its interpretation of the applicability of § 1226(a)." Pizarro Reyes, 2025 WL 2609425, at *8. If Respondents do not provide Patel with a bond hearing as ordered, he can renew his Fifth Amendment and APA claims in a subsequent complaint.

Accordingly, it is hereby

**ORDERED:**

1.    Petitioner Ganshyamkumar Shambhubhai Patel's Amended Petition for Writ of Habeas Corpus (Doc. 9) is **GRANTED in part.**

2.    Within **FOURTEEN (14) DAYS**, Respondents are **DIRECTED** to provide Patel with the statutory process required under § 1226, which includes a bond hearing.

3.    All other relief is **DENIED**.

4.    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on December 1, 2025.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

16